UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERONIKA MIROSHNICHENKO, | )<br>)<br>) |
| Plaintiff, | ) No. 08 C 0293 |
| vs. | )<br>)<br>) |
| ROBERT L. BLACKWOOD, Field Office Director, United States Citizenship & Immigration Services, | ) Judge: Norgle<br>)<br>)<br>) |
| Defendant. | )<br>) |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff, Veronika Miroshnichenko, moves this Honorable Court for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This motion is based upon the undisputed material facts as enumerated in the accompanying statement, the record as found in Plaintiff's USCIS file, this memorandum of points and authorities and upon any and all other factors this Honorable Court may choose to consider.

Plaintiff is entitled to summary judgment because the Defendant misapplied and misinterpreted federal immigration law and in so doing, erred in denying her eligibility to register permanent residence or adjust status. Plaintiff seeks a Declaration from this Honorable Court that no provision of federal law renders her ineligible to adjust status on account of her age.

II. ARGUMENT

History of the Fiancé(e) Nonimmigrant Visa

The Fiancé(e) visa, or "K" visa, was created on April 7, 1970 with the enactment of Pub. L. 91-225. The Act, for the first time, created a nonimmigrant classification which was directed to the ultimate grant of lawful permanent residence. The "K" nonimmigrant visa has been described as a "hybrid between an immigrant and nonimmigrant visa, one which contemplates that the alien will eventually obtain permanent residence in this country." Friedberger v. Schultz, 616 F. Supp. 1315, 1318, 3 Immigr. Re. A3-5 (E.D. Pa. 1985).

The process has been a benefit not only to the parties but also to the government. The procedure requires United States citizens to pre-qualify their intended bride or groom and his or her children for as to suitability and eligibility for immigration. Applicants for the "K" visa must submit police records from every police department under whose jurisdiction they have lived for more than six months since the age of sixteen. Personal history forms are submitted and FBI background and name checks are also performed before the visa is issued. Birth and custody records are checked to verify that children meet the legal requirements for eligibility to accompany or follow to join their parent to the United States.

After careful scrutiny, the fiancé(e) and his or her eligible children are issued a "K" visa; designated "K-1" for the parent and "K-2" for any children. Upon arrival in the United States, officers of the Customs and Border Protection agency (CBP) examine the sealed file which the alien has carried with him or her and decide whether or not the visa holder is admissible. Upon a determination of admissibility, the alien is granted a period of authorized stay of 90 days, during which time the marriage to the citizen petitioner must occur. If the marriage does not take place the alien fiancé(e) and his or her children are required to leave the United States prior to the expiration of the period of authorized stay.

If the marriage is timely performed, the fiancé(e) (now spouse) and his or her children are fully eligible for adjustment to permanent residence status and upon submitting the requisite application I-485 form with fees, proof of lawful admission and proof of timely marriage, and barring any new findings of inadmissibility under Section 212 their permanent residence is recorded.  8 CFR § 245.2(c)

It is noteworthy how few contested issues have arisen from this straightforward procedure.  Prior to 2006, only two cases had been published that had relevance to adjustment of "K" visa entrants:  *Matter of Dixon*, 16 I&N Dec. 335 (BIA 1977); 1997 WL 39292 and *Matter of Dawson*, 16 I&N Dec. 693 (BIA 1979); 1979 WL 44431.

The 1986 International Marriage Fraud Amendments (IMFA) made two modifications to the K-1 procedure.  The first added a requirement that the parties have met in the two years prior to petitioning for the visa; and the second made the adjustment to permanent resident status of the alien spouse and his or her sons and daughters conditional where the marriage occurred less than two years prior to adjustment.  To accommodate this latter restriction, language of INA § 214(d) was modified and INA § 216 was created to define the conditions on permanent residence status and to which persons such conditions are to be applied.

On August 6, 2002, the President signed into law the Child Status Protection Act (CSPA), Public Law 107-208, 116 Stat. 927, which amends the Immigration and Nationality Act by permitting an applicant for certain benefits to retain classification as a "child" under the INA, even if he or she has reached the age of 21.  Non-immigrant visa applications were not included in the CSPA and in a February 14, 2003 Memorandum[1] sent to District Directors, the then Immigration and Naturalization Service (INS) Executive Associate Commissioner, Johnny Williams discussed *inter alia*, the lack of applicability of the CSPA to "V" and "K" visas.  Williams wrote,

> "The CSPA does not apply to an alien obtaining K2 or K4 visas or extensions. While nothing would necessarily prohibit an alien who once was a K4 from seeking to

---

[1]  Available at: http://www.uscis.gov/files/pressrelease/CSPA2_pub.pdf

utilize the CSPA upon seeking adjustment, an alien who is a K2 cannot utilize the CSPA when seeking to adjust."

The wording of the Williams Memo implies that "K-2" children are subject to an age test when applying to obtain a K-2 visa <u>and</u> when seeking adjustment of status. The later implication has never been clarified by Williams or his successor(s), leading some district directors to adopt, for the first time, a policy of denying "K-2" children whose applications for adjustment were not adjudicated before reaching the age of 21. Indeed, Defendant Blackwood adopted the above-quoted wording from the Williams memo in his "Amended Decision on Adjustment of Status Application." *See* Plaintiff's Memorandum in Opposition to Motion to Dismiss, Exhibit A, pg. 2.

The relatively recent practice of denying eligibility to K-2 applicants for adjustment who reach the age of 21 during the adjudication process appears to be based almost entirely upon the erroneous inference of the Williams memo and is at odds with long-standing practice. More significantly, these denials are in contravention of the INA, and in direct disregard of the Form I-485 Instructions[2] and the other relevant regulations.

Such denials of K-2 adjustment applications have given rise to two district court cases in California. *Jiang v. Still*, No. CV-F-06-0369-LJO, 2007 WL 685700 (E.D. Cal. Mar. 5, 2007) which is currently under appeal; and *Verovkin v. Still*, No. C 07-3987, 2007 U.S. Dist. LEXIS 93904 (N.D. Ca. Dec. 21, 2007). These rulings will be discussed herein. The present case is the first to be brought on this issue outside the 9th Circuit.

---

[2]    Available at http://www.uscis.gov/files/form/i-485instr.pdf

<u>K-1 and K-2 Entrants Should be Primarily Adjudicated for Permanent Residence Status Under INA §214(d) and Not Under §245 Exclusively.</u>

At the core of the controversy is confusion concerning which section of the INA governs K-1 and K-2 entrants who apply for permanent residence status. The confusion nurtured by near silence on the issue in the statutes. Federal Regulations however, do address the issue more directly, albeit with a degree of ambiguity:

First, 8 CFR § 214.2(k)(6)(ii) states,

> Upon contracting a valid marriage to the petitioner within 90 days of his or her admission as a nonimmigrant pursuant to a valid K-1 visa issued on or after November 10, 1986, the K-1 beneficiary and his or her minor children may apply for adjustment of status to lawful permanent resident under section 245 of the Act. Upon approval of the application the director shall record their lawful admission for permanent residence in accordance with that section and subject to the conditions prescribed in section 216 of the Act.

While 8 CFR § 245.2(c) reads,

> An application for permanent resident status pursuant to section 214(d) of the Act shall be filed on Form I-485 with the director having jurisdiction over the applicant's place of residence. A separate application shall be filed by each applicant. If the application is approved, the director shall record the lawful admission of the applicant as of the date of approval. The applicant shall be notified of the decision and, if the application is denied, of the reasons therefor. No appeal shall lie from the denial of an application by the director but such denial shall be without prejudice to the alien's right to renew his or her application in proceedings under 8 CFR part 240. (Amended 7/1/94; 59 FR 33903) (Revised effective 4/1/97; 62 FR 10312)

Noting that section 214(d) [8 USC §1184(d)] is the primary statute controlling the fiancé(e) process, it would follow that fiancé(e)s and their children are to be adjudicated pursuant to the latter regulation [8 CFR § 245.2(c)] when applying for permanent residence status.

Published precedent decisions of the Board of Immigration Appeals "…shall be binding on all officers and employees of the Department of Homeland Security." 8 CFR

§103.7(g). The most recent decision by the Board of Immigration Appeals interpreting §214(d) was issued in 1979: *Matter of Dawson,* 16 I&N Dec. 693 (BIA 1979); 1979 WL 44431. At page 696 of that decision, which concerned a K-1 visa entrant who married but did not file a Form I-485, the Board wrote,

> In *Dixon,* we overruled *Harris,* concluding that the "viability" requirement applicable in adjustment of status under section 245 of the Act is not relevant in adjustment proceedings under section 214(d). At no point, however, did we suggest that the substantive and procedural requirements of section 214(d) relief are legally insignificant formalities. See *Dixon* at p. 4.
> 
> As the regulations implementing section 214(d) clearly indicate, a section 214(d) applicant must comply with adjustment procedures before recordation of lawful admission can occur. See 8 CFR § 245.2(c) [here footnote 4 refers to text of the regulation]. From the language of the statute itself, it is equally obvious that an applicant not only must present competent evidence that a bona fide marriage was celebrated within 90 days of arrival but also that he/she is otherwise admissible before the application warrants approval. Only when these two statutory requirements are satisfied, does recordation become mandatory. Thus, **while there is no discretionary element in 214(d) adjustment, as there is in adjustment of status under section 245 of the Act**, there is nothing automatic about the process either. [Emphasis Added]

The Board of Immigration Appeals left no doubt that section 214(d) fiancé(e) adjustments were to be adjudicated under the regulation then found at 8 CFR § 245.2(d) which is now restated at 8 CFR § 245.2(c).

As cited in "footnote 4" and found at page 695 of the decision, the regulation then read,

> An application for permanent residence status pursuant to section 214(d) of the Act shall be filed on form I-485 with the district director having jurisdiction of the applicant's place of residence. A separate application shall be filed by each applicant. If the application is approved, the district director shall record the lawful admission of the applicant as of the date of approval. The fee previously paid for filing the application shall be considered payment of the required visa fees, as of the date of the approval of the application. The applicant shall be notified of the decision and, if the application is denied, of the reasons therefor. No appeal shall lie from the denial of the application by the district director but such denial shall be without prejudice to the alien's right to renew his application in proceedings under part 242 of this chapter.

As can be seen, the regulatory provisions have remained essentially unchanged.[3]

The Board also made a categorical distinction between adjustments adjudicated under section 245 of the Act and those adjudicated under section 214(d). Section 214(d) applies <u>only</u> to those who entered the United States as fiancé(e)s of U.S. citizens and their children, while section 245 is more encompassing.

Further evidence can be found in the published instructions which accompany form I-485, "Application for Registration of Permanent Residence or Adjustment of Status." *Available at* http://www.uscis.gov/files/form/i-485instr.pdf

Pursuant to federal regulation, instructions that accompany a form carry the force of law: "Every application, petition, appeal, motion, request, or other document submitted on the form prescribed by this chapter shall be executed and filed in accordance with the instructions on the form, such instructions (including where an application or petition should be filed) being hereby incorporated into the particular section of the regulations in the chapter requiring its submission." 8 CFR 103.2(a)(1).

On the first page of the I-485 application, Part 2 labeled "Application type" the person is asked to check one of 8 boxes that follow the statement: "*I am applying for an adjustment to permanent resident status because*:" Plaintiff checked the third box labeled, "*c. I entered as a K-1 fiancé(e) of a United States citizen whom I married within 90 days of entry, or I am the K-2 child of such a fiancé(e)*." Note that box "c" is for the exclusive use of K-1 and K-2 entrants while boxes "a" and "b" are for immigrants whose visa

---

[3] The only change to the regulation by the 1986 International Marriage Fraud Amendments (IMFA) was to delete the sentence relating to visa fees to match the change in the statute. In 1996, reference to "part 242" was changed to "part 240", references to "district director" have been replaced by "director" and finally, "his" was placed by "his or her."

number has been approved or those who claim derivative status from a spouse or parent who have been granted lawful permanent residence.

As to the Form I-485 Instructions, on page one under the heading *"Who May File This Form I-485?"* each of the eight check boxes on the application is further clarified. Paragraph 3 of the instructions addresses application box "c" pertaining to K-1/K-2 eligibility to adjust:

> *"A. You may apply to adjust status if you were admitted to the United States as the K-1 fiancé(e) of a United States citizen and you married that citizen within 90 days"*
>
> *"B. If you **were admitted as** the K-2 child of such a fiancé(e), you may apply to adjust status based on your parent's adjustment application."* [Emphasis added].

There is no verbiage stating or implying that the K-2 must still be a child under the age of 21 at the time of application or that he or she must remain under 21 throughout the months and years it may take to process the application. To assert that such are true, yet not spelled out explicitly or implicitly on either the application or its instructions would conflict with the meaning of the words, "***were admitted as.***"

Further, on page 2, section 10, we find a list of 12 situations where an alien is <u>not</u> eligible for adjustment. This section is titled, "*Who Is Not Eligible to Adjust Status?*" Surely, if the Defendant's contention were accurate and a K-2 who has reached the age of twenty-one were, for a fact, ineligible to adjust status, here would be the obvious place to so disclose. Indeed, under this heading, there are two references to the K-2 entrant: In the first reference under subparagraph F it is stated that you are not eligible to adjust if, "*you failed to maintain your nonimmigrant status, other than through no fault of your own or for technical reason: unless you are applying because you are:……2. A K-1 fiance(e) or a K-2 fiance(e) **dependant**, who married the United States petitioner within 90 days of admission;*" [Emphasis added]

It is important to note that the word "*dependant*" has been carefully substituted for the word "*child*" where the words "*were admitted as*" have be replaced with the word

"*are*".  The drafters of the instructions were evidently mindful of the potential for misapprehension of the type that necessitated this suit.

As further evidence, the same care has been taken in the next paragraph of the I-485 instructions which reads, you may not adjust status if, *"You were admitted as a K-1 fiancé(e) , but did not marry the U.S. citizen who filed the petition for you, or you **were admitted as** the K-2 child of a fiancé(e) and your parent did not marry the United States citizen who filed the petition:"* [Emphasis added]

Each of these three foregoing references, as contained in the I-485 instructions, are carefully phrased to be fully consistent with the understanding that a K-2 entrant's eligibility to adjust status does not turn on his or her age, neither at the time of filing; nor at anytime thereafter.   Nothing in the instructions to form I-485 can be seen as supporting the Defendant's interpretation.

<u>Discussion of *Jiang* and *Verovkin* Cases</u>

Fan Jiang and her mother arrived from China the day before her 21st birthday. After Jiang's birthday had passed but within 90 days of arrival, Jiang's mother married her U.S. citizen fiancé.  She and her mother then filed I-485 applications to adjust status. USCIS San Francisco District director, David Still, approved Jiang's mother's application but denied Jiang, ruling that she was no longer eligible for permanent residence status because she was over the age of 21 when her application was adjudicated.

Jiang subsequently sued in the Eastern District of California for a Declaratory Judgment that she is statutorily eligible for adjustment of status. See *Jiang v. Still*, No. CV-F-06-0369-LJO, 2007 WL 685700 (E.D. Cal. Mar. 5, 2007).  On cross motions for summary judgment, magistrate judge, Lawrence O'Neill ruled against Jiang.  In this ruling, the *Jiang* court determined that Defendant's denial of ineligibility was proper because Jiang <u>did not apply</u> for adjustment while she still met the definition of "minor child."  The *Jiang* court emphasized that portion of 8 CFR § 214.2(k)(6)(ii) which reads, "..**the K-1 beneficiary and his or her minor children may apply for adjustment of**

**status to lawful permanent resident under section 245 of the Act.**" [Emphasis in original].

Later the same year (2007), the *Verovkin* Court ruled in favor of K-2 adjustment applicant, Dmytro Verovkin, holding that no test of age is applicable in regard to K-2 adjustment eligibility. See *Verovkin v. Still*, No. C 07-3987, 2007 U.S. Dist. LEXIS 93904 (N.D. Ca. Dec. 21, 2007).

The *Verovkin* facts differ from *Jiang* in that (like the present Plaintiff) Verovkin reached the age of 21 <u>after</u> his mother's marriage and <u>after</u> he filed his I-485 application. The *Verovkin* court pointed out that, while the court disagreed with the *Jiang* decision, "..even under the *Jiang* rule, the plaintiff prevails" (because, unlike Jiang, Verovkin filed his I-485 application before reaching the age of 21).

The *Verovkin* court held that when adjusting status pursuant to INA §245 [8 USC §1255], the requirement of immediate visa availability imposed in subparagraph (a) is satisfied for both parent and child as one, through the parent's eligibility as the spouse of a U.S. citizen. The *Verovkin* court's thoughtful interpretation thus resolves the visa availability conundrum regarding a K-2 child who has already reached the age of 18 when his or her parent marries the U.S. Citizen and is therefore not considered the citizen's stepchild.

### III. CONCLUSION

Plaintiff cannot resolve which interpretation of immigration law should be appropriate to the issue before this Honorable Court. However, she firmly trusts that the quality of the American judiciary is paramount and that what is right, proper and just will emerge from scholarly deliberation. Plaintiff believes she has demonstrated that the interpretation of the Defendant, upon which he ruled Plaintiff ineligible to remain in the United States with her family is arbitrary, being without the support of any known statute, regulation or case law, and above all, cannot withstand the scrutiny of common sense or wise public policy.

Therefore, Plaintiff respectfully requests that this Honorable Court grant summary judgment in her favor.

                                                  Respectfully submitted,

Dated this 29th day of February, 2008      s/ Veronika Miroshnichenko
                                                  503 Waterford Drive
                                                  Oswego, Illinois 60543
                                                  Ph: 630-636-6149
                                                  E-Mail: veronika.miro@gmail.com

- 12 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the following documents:

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**PLAINTIFF'S LOCAL RULE 56.1(a) STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

were served on February 29, 2008, in accordance with FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing pursuant to the district court's Electronic Case Filing (ECF) system as to ECF filers.


s/ Veronika Miroshnichenko
503 Waterford Drive
Oswego, Illinois 60543
Ph: 630-636-6149
E-Mail: Veronika.miro@gmail.com